UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RYLAWN WALKER,

                                    Plaintiff,

                    – against –

THE CITY OF NEW YORK, P.O. JOHN DOE
1-5, P. O. DANIEL PANTALEO, JOSEPH
TORRES, SGT. IGNAZIO CONCA, P. O.
CHRISTIAN CATALDO, CAPT. MARK
MOLINARI, P. O. WHITE, P. O. HERBERT, SGT.
CHERNYAVSKY, P.O. PHILIP VACCARINO,
P.O. GREGORY HOWARD, and
LT. SCOTT SWEENEY,

                                    Defendants.

**OPINION AND ORDER**

 14-CV-808 (ER)

Ramos, D.J.:

       Rylawn Walker ("Plaintiff") brings suit against The City of New York ("Defendant" or

"the City") and various named and unnamed New York City Police Department Officers

(collectively, "the Officers" or "Defendants") pursuant to 42 U.S.C. § 1983.  Defendants move to

dismiss Plaintiff's claims of malicious prosecution, denial of the right to a fair trial, malicious

abuse of process, and *Monell* liability against the City of New York under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Defs.' Mem. L. Supp. Mot. Dismiss, Doc. 62.  For the reasons

stated below, the Defendants' motion to dismiss is GRANTED.

I.   **Factual Background**[1]

Plaintiff is an African American male and a resident of Richmond County (Staten Island), New York.  Third Amended Complaint ("TAC") ¶ 6, Doc. 42.  On February 16, 2012, when Plaintiff was nineteen years old, the Officers approached and arrested him as he was walking near his home.  *Id.* ¶¶ 6, 21-23.  Plaintiff maintains that he had committed no crime, nor was he in possession of any contraband or controlled substances at the time.  *Id.* ¶ 22.

Plaintiff was taken to the 120th Precinct in Staten Island, where he was detained in a cell for over thirty hours and subjected to a search of his private parts by the Officers.  *Id.* ¶¶ 23-25.  Plaintiff alleges that the arresting officer, Daniel Pantaleo ("Pantaleo"), along with the other Officers, misrepresented facts concerning the circumstances of his arrest in the police report and "other documents."  *Id.* ¶ 25.  Specifically, he alleges that the police report falsely claimed that Plaintiff possessed marijuana and that he was at some point present inside an apartment at 225 Park Hill Road.  *Id.*  As a result, Plaintiff was charged with violations of New York Penal Laws §§ 221.05 and 221.10.[2]  *Id.* ¶¶ 24-25.  Pantaleo accused Plaintiff of committing these crimes before the Richmond County District Attorney's Office and the Criminal Court of the City of New York.  *Id.* ¶ 26.  Plaintiff claims that Defendants lied because they wanted to avoid punishment for abusing their authority and were also seeking to obtain overtime compensation and credit for an arrest.  *Id.* ¶ 27.  On February 17, 2012, Judge Alan Meyer of the New York

---

[1] The following facts are based on the allegations in the Third Amended Complaint, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] Under New York Penal Law § 221.05, it is unlawful to possess marijuana.  Section 221.10 constitutes the unlawful possession of marijuana in a public place, a class B misdemeanor.

City Criminal Court dropped the charges against Plaintiff.  *Id.* ¶ 24.  Plaintiff was released after his arraignment.  *Id.* ¶ 29.

## II.    Procedural History

Plaintiff commenced this action on February 10, 2014 against John Doe and the City of New York claiming:  (1) false arrest/ unlawful imprisonment; (2) intentional infliction of mental and emotional distress; (3) negligent infliction of mental and emotional distress; (4) civil rights violations under 42 U.S.C. § 1983; and (5) a *Monell* violation.[3]  Doc. 1.

On October 18, 2014, Plaintiff amended his complaint for a third and final time, listing Officer Pantaleo, Officer Torres, Officer Cataldo, Sergeant Conca, Captain Molinari, Officer White, Officer Herbert, Sergeant Chernyavsky, Officer Vaccarino, Officer Howard, and Lieutenant Sweeney as Defendants, while also including Officers John Doe 1-5.[4]  TAC, Doc. 42.  Plaintiff modified his causes of action from the previous complaints by eliminating his claims for intentional and negligent infliction of emotional distress and asserting the following claims:  (1) a deprivation of rights under 42 U.S.C. §§ 1981 and 1983; (2) false arrest/unlawful imprisonment (3) malicious prosecution; (4) abuse of process; (5) a violation of right to a fair trial; (6) failure to intervene; and (7) supervisory liability.  *Id.*  On November 14, 2014, Defendants filed a motion to dismiss Plaintiff's malicious prosecution, denial of the right to a fair

---

[3] An individual named Kenneth Smith, who the City claims was arrested with Plaintiff, filed an almost identical action on November 13, 2014.  *See Smith v. The City of New York et al.*, No. 14 Civ. 9069, Docs. 1, 11.  Smith is also represented by the same counsel as Plaintiff.  This Court accepted Smith's case as related on March 2, 2015.

[4] As of the date of this Opinion, Officer Vaccarino has not been served with process.  The City has indicated that, when Officer Vaccarino is properly served, it reserves the right to move for dismissal on his behalf.  Doc. 62 at 1.

trial, malicious abuse of process, and *Monell* claims.  Defendants do not address Plaintiff's other claims for false arrest/ unlawful imprisonment, failure to intervene, and supervisory liability.[5]

### III.     12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Sikhs for*

---

[5] Plaintiff's first cause of action broadly states that Defendants violated his rights under 42 U.S.C. §§ 1981 and 1983.  TAC ¶¶ 35-41.  Specifically, it claims that Defendants "deprived" Plaintiff "of the rights, privileges and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments[.]"  *Id.* ¶ 37.  However, the cause of action does not identify which of Plaintiff's rights were violated under the Fourth or Fourteenth Amendments.  Therefore, it is unclear to what extent Defendants' motion to dismiss is directed at Plaintiff's first cause of action.

*Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## IV.   Discussion

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Thus, a civil rights action brought under § 1983 will stand only insofar as a plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)). The parties do not dispute that Defendants were acting under the color of state law. Therefore, the Court need only address whether Plaintiff was deprived of a constitutional right, based on the alleged facts.

In his opposition papers, Plaintiff states "[t]he moving defendants do not seek the dismissal of the First, Second, Sixth, and Seventh Causes of Action." Pl.'s Mem. L. Opp., Doc. 63 at 4. However, nowhere in his opposition does he provide arguments in support of his third claim for malicious prosecution, fourth claim for malicious abuse of process, or fifth claim for

5

deprivation of the right to a fair trial—all of which Defendants also move to dismiss.  Defendants state that since the claims are not mentioned in Plaintiff's opposition, they have been abandoned and should be dismissed by the Court.  Defs.' Reply Mem. L. Supp. Mot. Dismiss, Doc. 64 at 2. "[A] court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."  *See Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (citing *Jessamy v. City of New Rochelle*, *New York*, 292 F. Supp. 2d 498, 515 (S.D.N.Y. 2003)).  Indeed, of the claims that Defendants move to dismiss, Plaintiff's eighth claim for *Monell* liability is the *only* one that he defends in his opposition papers.  Accordingly, the Court deems Plaintiff's third, fourth, and fifth claims abandoned.  However, for the reasons set forth below, even if the Plaintiff had not abandoned the malicious prosecution, malicious abuse of process, and right to fair trial claims, the Court would still dismiss them for failure to state a claim.

### A.  Malicious Prosecution

A claim for malicious prosecution under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures is "substantially the same" as a claim for malicious prosecution under New York law.  *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Conway v. Vill. of Mount Kisco, N.Y.*, 750 F.2d 205, 214 (2d Cir. 1984)). Specifically, in order to state a claim for malicious prosecution under § 1983, "the plaintiff must allege the four elements of malicious prosecution under New York state law and a 'sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Manbeck v. Micka*, 640 F. Supp. 2d 351, 369 (S.D.N.Y. 2009) (quoting *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000)).

Under New York law, a plaintiff alleging malicious prosecution must show that:  (1) "the initiation or continuation of a criminal proceeding against plaintiff;" (2) "termination of the proceeding in plaintiff's favor;" (3) "lack of probable cause for commencing the proceeding;" and (4) "actual malice as a motivation for defendant's actions."  *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).  In order for Plaintiff to provide a constitutional basis for his malicious prosecution claim, he must show a deprivation of liberty consistent with the concept of a "seizure."  *Singer v. Fulton Cnty. Sheriff,* 63 F. 3d 110, 116 (2d Cir. 1995).  "[S]ince the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings."  *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).  A seizure pursuant to legal process will either be in the form of a warrant and accompanying arrest or "a subsequent arraignment, in which any *post*-arraignment deprivations of liberty might satisfy this constitutional requirement."  *Singer,* 63 F. 3d at 117 (emphasis added) (internal citations omitted).

The court dropped all criminal charges against the Plaintiff at his arraignment.  TAC ¶ 24.  Plaintiff does not allege that he was denied any liberties after the false charges against him were dismissed and he was no longer detained.  "[W]here the plaintiff's claim arises out of a warrantless arrest, he cannot bring a malicious prosecution claim based only on pre-arraignment events, since there have been no actions taken pursuant to judicial process."  *Gordon v. City of New York*, No. 10 Civ. 5148 (CBA) (LB), 2012 WL 1068023, at *7 (E.D.N.Y. Mar. 29, 2012) (citing *Singer*, 63 F.3d at 117) ("[The plaintiff's] arrest cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not 'pursuant to legal process.'").  Furthermore, Plaintiff's mere appearance at his arraignment is

not sufficient to show a Fourth Amendment violation.  *See Morales v. United States,* 961 F. Supp. 633, 637 (S.D.N.Y. 1997) ("[W]here . . . the arrested person . . . has no restrictions on travel, is not required to post bail, and is only required to appear at subsequent hearings (at which time the charges are dismissed), there may not be an injury sufficient to implicate the Fourth Amendment.").  For the reasons stated above, Plaintiff's malicious prosecution claim is dismissed with prejudice.

### B.  Malicious Abuse of Process

Plaintiff claims that Defendants falsely arrested him in order to avoid being disciplined for their abuse of authority and to gain overtime compensation.  TAC ¶¶ 50-53.  The Second Circuit analyzes malicious abuse of process claims under § 1983 by reference to state law.  *See Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003).  Under New York law,

> [A] malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.

*Id*.  (citation and internal quotation marks omitted).  Much like a claim for malicious prosecution, "[t]he gist of abuse of process is the abuse of process *after* it is regularly issued."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (emphasis added) (citation and internal quotation marks omitted).

"Bringing a defendant before a judge for arraignment satisfies the first element."  *Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001) (citing *Cook*, 41 F.3d at 80).  Here, Plaintiff claims that the charges against him were not dropped until he actually appeared at his arraignment.  TAC ¶ 24.  However, the mere issuance of criminal process does not give rise to a claim unless defendants pursue a collateral objective *after* the process is issued.  *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995) (listing cases).  A malicious motive alone does not give

rise to an abuse of process claim.  *Savino*, 331 F.3d at 77 (citing *Curiano v.* Suozzi, 63 N.Y.2d

113, 117, 469 N.E.2d 1324, 1326 (1984); *Hauser v. Bartow*, 273 N.Y. 370, 374, 7 N.E.2d 268,

269 (1937) ("It is not enough that the actor have an ulterior motive in using the process of the

court.  It must further appear that he did something in the use of the process outside of the

purpose for which it was intended.")).

Plaintiff has failed to identify any collateral objective or action taken by Defendants *after*

the issuance of process.  For example, had Plaintiff been economically harmed, extorted,

blackmailed, or coerced by the Defendants *after the arraignment*, his rights would have been

violated.  *De Santis v. City of New York*, No. 10 Civ. 3508 (NRB), 2011 WL 4005331, at *9

(S.D.N.Y. Aug. 29, 2011) (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275

(S.D.N.Y. 2010)).  Even assuming that Defendants arrested, detained, and charged Plaintiff in

order to avoid being disciplined and to gain overtime compensation, they pursued those

objectives prior to his arraignment.  TAC ¶ 52.  Defendants' motion to dismiss the malicious

abuse of process claim is granted and Plaintiff's claim is dismissed with prejudice.

### C.  Deprivation of a Right to a Fair Trial

A § 1983 claim for denial of the right to a fair trial requires that a trial have actually been

conducted.  *Fudge v. Phoenicia Times*, No. 09 Civ. 0301 (TJM), 2009 WL 2568576, at *2

(N.D.N.Y. Aug. 19, 2009) ("To the extent Plaintiff claims that he was denied the right to a fair

trial due to the pre-trial release of false information concerning him, such a claim must be

dismissed because there was no trial.").  Here, all charges against Plaintiff were dismissed prior

to trial.  TAC ¶ 24.  *See Schiavone Const. Co. v. Merola*, 678 F. Supp. 64, 66 (S.D.N.Y. 1988)

("[N]o denial of a fair trial can be shown where the plaintiff was acquitted of the crime

charged.").  Therefore, the claim must be dismissed with prejudice.

### D. Municipal Liability Pursuant to 42 U.S.C. § 1983 ("*Monell* Claim")

A municipality cannot be held liable under § 1983 solely on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). A § 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was the result of an official policy or custom. *Id.* at 690, 691. Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692)).

The Second Circuit has established a two-pronged test for § 1983 claims brought against a municipality. First, the plaintiff must prove "'the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official].'" *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights. *Id.* Lawsuits brought against state officials in their official capacity are treated as cases against the State and "the entity's 'policy or custom' must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality;
> (2) actions taken or decisions made by government officials
> responsible for establishing municipal policies which caused the
> alleged violation of the plaintiff's civil rights; (3) a practice so
> persistent and widespread that it constitutes a custom or usage and
> implies the constructive knowledge of policy-making officials; or
> (4) a failure by official policy-makers to properly train or supervise
> subordinates to such an extent that it amounts to deliberate
> indifference to the rights of those with whom municipal employees
> will come into contact.

*Cuellar v. Love*, No. 11 Civ. 3632 (NSR), 2014 WL 1486458, at *10 (S.D.N.Y. Apr. 11, 2014)

(quoting *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)).  Plaintiff seeks to prove

the existence of multiple policies or customs that caused his constitutional injuries by claiming

that the New York Police Department ("NYPD") has a custom or practice of arresting

individuals without probable cause and falsifying reports to conceal their abuse of authority.

TAC ¶ 69.  Specifically, he claims that there has been a pattern of false arrests in Richmond

County directed at people of color as shown by the sheer number of lawsuits brought against the

NYPD.  *Id.* ¶ 77.  Furthermore, Plaintiff claims that the NYPD has systematically engaged in

deficient screening, hiring, investigation, retaining, training, and supervision of its employees

(including the individual defendants).  *Id.* ¶ 70.

The TAC does not allege that the City adopted a formally recognized policy under the

first prong of the Second Circuit test, nor does it suggest that any of the individual Defendants

are final policymakers for the City to satisfy the second prong.  *See Cuellar v. Love*, No. 11 Civ.

3632 (NSR), 2014 WL 1486458, at *10 (S.D.N.Y. Apr. 11, 2014) (*see also City of St. Louis v.

Praprotnik*, 485 U.S. 112, 123 (1988) (O'Connor, J., plurality opinion) (Only municipal officials

who have "final policymaking authority" with respect to the activities that allegedly violated a

plaintiff's constitutional rights "may by their actions subject the government to § 1983

liability.").  Thus, of the four categories among which a plaintiff must establish municipal

liability, the Court reads the TAC as implicating the third and fourth categories—a practice so widespread that it constitutes a custom or usage, and a failure to train/supervise.  For the reasons stated below, these allegations are not supported by factual information that makes the inference of culpability plausible.

### i.    A Persistent and Widespread Custom

Under the third prong of the *Monell* test, "an act performed pursuant to a custom that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Tieman v. City of Newburgh*, No. 13 Civ. 4178 (KMK), 2015 WL 1379652, at *16 (S.D.N.Y. Mar. 26, 2015) (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) (internal quotation marks omitted)).  In order for Plaintiff to establish municipal liability through this prong, he needs to show that the City "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy."  *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) (citing *Monell*, 436 U.S. at 694).

While Plaintiff provides general allegations that the City has adopted a widespread custom, the facts pled are insufficient to meet this prong's requirements.  For instance, he claims that the NYPD has subjected "innocent citizens" to excessive force during other arrests and that it has established a practice to conceal its abuse of authority.  TAC ¶ 69.  Plaintiff further alleges that the City of New York has "tacitly ratified and authorized the conduct complained of, and has displayed deliberate indifference."  *Id.* ¶ 70.  The TAC alleges that the City has acted with deliberate indifference through its failure to train, retain, supervise, discipline, and monitor the defendants and other members of the service "guilty of similar abuses."  *Id.* ¶ 79; *see also*

*id.* ¶ 82.  Plaintiff concludes that the City, "through a policy, practice or custom, directly caused the constitutional violations suffered by the plaintiff."  *Id.* ¶ 71.  Despite Plaintiff's efforts, the aforementioned list of allegations are "conclusory, and therefore must be disregarded."  *Tieman*, 2015 WL 1379652, at *17 (listing cases); *see also Duncan v. City of New York*, No. 11 Civ. 3826 (CBA) (JO), 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that New York City had a custom of making and tolerating false arrests and of using excessive force "[were] insufficient to state a claim of municipal liability under *Monell*"); *Simms v. The City of New York*, No. 10 Civ. 3420 (NGG) (RML), 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) a*ff'd sub nom. Simms v. City of New York*, 480 F. App'x 627 (2d Cir. 2012) (dismissing conclusory allegations that did not provide any facts that would allow the court to infer what "city policies, practices, or customs contributed to or caused the deficiency").

The only other allegations Plaintiff makes in support of his claim of a consistent and widespread practice include:  (1) the convictions of two NYPD officials; and (2) numerous lawsuits allegedly brought by people of color against the City and NYPD officials, including the individual Defendants.  TAC ¶¶ 73-77, 78.  First, Plaintiff states that members of the NYPD have been convicted of crimes involving corruption, perjury, and false accusations against civilians.  *Id.* ¶ 73.  However, Plaintiff only specifically points to the convictions of former NYPD commissioner, Bernard Kerik ("Kerik") and former narcotics Officer Jerry Bowen ("Bowen").  *Id.* ¶¶ 74-75.  Kerik was convicted of corruption and Bowen was convicted of homicide and attempted murder.  *See id.*  Thus Plaintiff's allegations fail to support the notion that the City maintains a policy or custom of arresting individuals without probable cause and falsifying evidence.  *See id.* ¶ 74.  Simply put, the convictions of Kerik and Bowen have nothing to do with the particular claims that Plaintiff alleges against Defendants.

Second, Plaintiff has attempted to display a consistent pattern or practice of abuse by claiming to list thirty-six separate actions in which the NYPD allegedly falsely arrested persons of color for drug related offenses.[6]  TAC ¶ 77.  Plaintiff relies on *Colon v. City of New York*, No. 09 Civ. 8 (JBW), 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009), in which a court denied the City's motion to dismiss the plaintiffs' *Monell* claim, citing in part the existence of "similar civil rights actions," which the plaintiffs listed in their complaint.  *Id*. ¶ 76; *see also Colon*, 2009 WL 4263362, at *1, 2.  However, as Defendants note, the court in *Colon* not only relied on the plaintiffs' list of cases, but also on "anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department."[7]  *Colon*, 2009 WL 4263362, at *2.  Furthermore, it is unclear whether the "other similar civil rights actions" that the plaintiffs in *Colon* cited resulted in a finding of liability.  Here, Plaintiff fails to assert "anecdotal evidence" of the alleged policy or custom by merely listing the names of numerous lawsuits, without indicating whether they resulted in a finding of liability against the Officers or the City or providing any specific details about the cases.

Defendants, in turn, analogize the present case to *Simms v. City of New York*, 480 F. App'x 627 (2d Cir. 2012).  *See* Doc. 62 at 12.  In *Simms*, the plaintiff did not list a series of lawsuits to establish *Monell* liability, as the Plaintiff does here.  Rather, the *Simms* plaintiff

---

[6] The Court notes that although Plaintiff claims to have listed thirty-six lawsuits, Defendants only counted twenty-eight.  *See* TAC ¶ 77, Doc. 62 at 13.  In a separate letter submitted to the Court *after* the TAC was filed, Plaintiff produced a similar list of cases.  Pl.'s Pre-Mot. Conf. Ltr., Doc. 55, Ex. 2.  However, on a motion to dismiss, the Court is limited to the allegations contained in the plaintiff's complaint.  *See Kramer v. Time Warner Inc*., 937 F.2d 767, 773 (2d Cir. 1991) ("A district court must confine itself to the four corners of the complaint when deciding a motion to dismiss under Rule 12(b)(6).")

[7] The *Colon* court indicated that this "anecdotal evidence" was obtained through "[i]nformal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts."  *Colon*, 2009 WL 4263362, at *2.  However, the court did not provide any citations for the sources it was relying on to reach its conclusion.

14

simply cited the court's determination in *Colon* concerning the existence of anecdotal evidence of "repeated, widespread falsification by arresting officers of the New York Police Department." *See Simms*, 480 F. App'x at 630; *see also Colon*, 2009 WL 4263362, at *2.  In a holding that was upheld by the Second Circuit, the lower court in *Simms* concluded that "[e]ven less relevant is Simms's second assertion that another judge in this courthouse determined that certain allegations made in an unrelated consolidated action against the City were sufficient to survive a motion to dismiss."  *Simms*, 2011 WL 4543051, at *3; *see also Simms v. City of New York*, 480 F. App'x 627, 630 (2d Cir. 2012) ("[The plaintiff's] citation of an unrelated action, in which another district court addressed the sufficiency under Fed. R. Civ. P. 12(b)(6) of a separate complaint premised on a different set of factual allegations, does not support an inference that [his] injuries were caused by the City's failure to train its employees.").  It further noted that *Colon* did not constitute a finding of liability and that the plaintiffs alleged different injuries and blamed different city policies.  *Id*.  To the extent the TAC cites *Colon* in an attempt to use the court's holding itself as evidence of a policy or custom, it must also fail.

Plaintiff's case is most similar to *Tieman*, 2015 WL 1379652, at *2.  There, the plaintiff listed nine lawsuits, which he claimed demonstrated that the city "has an extensive history of lawsuits and other complaints alleging the use of excessive force by its employees."  *Id*. at *2-3.  However, in granting the City's motion to dismiss the plaintiff's *Monell* claim, the *Tieman* court observed, "even if the civil complaints involved comparable conduct to that alleged here, 'none resulted in an adjudication of liability.'"  *Id*. at *17 (citing *Walker v. City of New York*, No. 12 Civ. 5902 (PAC), 2014 WL 1259618, at *3 (S.D.N.Y. Mar.18, 2014)); *see also Strauss v. City of Chicago*, 760 F.2d 765, 768-769 (7th Cir. 1985) (holding that, even pre-*Twombly* and *Iqbal*, allegations of complaints about similar conduct were insufficient to state a claim for a

15

widespread custom under *Monell* because "the number of complaints filed without more, indicates nothing . . .."); *Collins v. City of New York*, 923 F. Supp. 2d 46, 479 (E.D.N.Y. 2013) (holding that the "litany of other police-misconduct cases" discussed in the plaintiff's complaint involved settlements without admissions of liability and unproven allegations and  "were insufficient to make a plausible case for *Monell* liability").

Here, in addition to claiming that the thirty-six actions listed demonstrated a pattern of false arrests, the TAC provides a list of lawsuits that Officers Pantaleo, Howard, Torres, Vaccarino, Cataldo, and Sergeant Conca have all been parties to.  TAC ¶¶ 77-78.  The Court's independent inquiry revealed that, although most of the purported thirty-six lawsuits that Plaintiff cites consist of false arrest claims, much like *Tieman*, none of them attribute liability to the particular Officers or the City.  Nor have any of the lawsuits against the individual Defendants resulted in a finding of liability.  *See id.* ¶ 78.  In fact, they either settled or are currently pending.[8]  Furthermore, Plaintiff cites lawsuits that span across *thirteen* years without describing them in any detail—thereby making his case even weaker than *Tieman*, in which the plaintiff listed and described lawsuits filed during the five years before the incident at issue.  *See Tieman*, 2015 WL 1379652, at *2.  Thus, like *Tieman*, the lawsuits that Plaintiff cites, even when combined with the rest of his allegations, "are insufficient to plausibly support an inference of a widespread custom."  *Id.* at *17.

---

[8] As to the lawsuits brought against the City, Officers Pantaleo, Howard, Torres, Vaccarino, Cataldo, and Sgt. Conca, all were settled except *Duncan et al v. City of New York et al.*, No. 12 Civ. 1565 (PKC) (JO) and *Martin v. City of New York et al.*, No. 12 Civ. 4507 (SLT) (JO), which are currently pending.  Plaintiff also cites *Collins v. City of New York*, but does not provide an accurate docket number; thus, the Court is unable to verify whether or not the case has been settled or even exists.

In his opposition papers, Plaintiff characterizes Defendants' motion as "asking the Court to . . . disbelieve the numerous people of color who have brought these lawsuits," concluding "[t]his is not only a form of deliberate indifference itself, but racially discriminatory indifference." Doc. 63 at 11-12. However, that is neither what the City is requesting the Court to do, nor does it describe the Court's role in this case. The City is asking the Court not to presume that a constitutional violation took place in cases in which no finding of liability was ever made or acknowledged. Doc. 64 at 3. Indeed, although it is routine for courts to take judicial notice of court documents, they do so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (internal citations omitted). It is not within this Court's purview to assess the veracity of either the claims of outside plaintiffs, or the defenses presented against them in cases that have settled or are pending before other judges.

While Plaintiff attempts to show a widespread policy or pattern of abuse, he has failed to allege sufficient facts to establish that the City has adopted such an abusive policy towards people of color. Plaintiff fails to satisfy this third factor of the Second Circuit's municipal liability test.

### ii.    A Failure by Official Policymakers to Train or Supervise

Next, the Court must consider whether Plaintiff has adequately alleged a claim against the City under a deliberate indifference theory, the fourth category of *Monell* claims. If "a local government is faced with a pattern of misconduct and does nothing," it compels the "conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Tieman*, 2015 WL 1379652, at *18 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)) (internal quotation marks omitted). A city can be held liable for a single instance

of misconduct by a low-level employee, if, under the circumstances, the unconstitutional

consequences of a failure to train or supervise were "patently obvious." *Connick*, 131 S. Ct. at

1361.  When the municipality does not respond to the obvious need for training and supervision,

its deliberate indifference or acquiescence may properly be considered city policy that is

actionable under § 1983.  *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011), *cert. denied*,

132 S. Ct. 1741, 182 L. Ed. 2d 528 (U.S. 2012).   However, "a failure to act, train, or supervise

can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy

of current practices so likely to result in a deprivation of federal rights, that the municipality or

official can be found deliberately indifferent to the need.'"  *Tieman*, 2015 WL 1379652, at *18

(quoting *Reynolds*, 506 F.3d at 192).

Plaintiff alleges failure to train and failure to supervise/discipline, which are two types of

deliberate indifference claims.  Before a municipality may be held liable under either theory, a

plaintiff must meet the following three requirements:  (1) "a policymaker knows to a moral

certainty that her employees will confront a given situation[;]" (2) "the plaintiff must show that

the situation either presents the employee with a difficult choice of the sort that training or

supervision will make less difficult or that there is a history of employees mishandling the

situation[;]" and (3) "the wrong choice by the city employee will frequently cause the

deprivation of a citizen's constitutional rights."  *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d

Cir. 2007) (internal citations and quotation marks omitted).

In order to establish deliberate indifference for a failure to supervise and/or discipline

claim, the plaintiff must "show that the need for more or better supervision to protect against

constitutional violations was obvious."  *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.

1995) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)).[9]  "An obvious need

may be demonstrated through proof of repeated complaints of civil rights violations; deliberate

indifference may be inferred if the complaints are followed by no meaningful attempt on the part

of the municipality to investigate or to forestall further incidents."  *Id.* (internal citations

omitted).  Thus, an allegation of numerous complaints about police misconduct is insufficient to

raise an inference of deliberate indifference due to failure to supervise without more.  *See*

*Tieman*, 2015 WL 1379652, at *20-21.  In order for a plaintiff to prove deliberate indifference

with respect to failure to supervise/discipline, he must plead one of two combinations of facts.

First, a plaintiff may establish that (1) "there was a pattern of *allegations of or complaints* about

similar unconstitutional activity," and (2) "that the municipality consistently *failed to investigate*

those allegations."  *Tieman*, 2015 WL 1379652, at *21 (emphasis added).  Alternatively, a

plaintiff may plead (1) "that there was a pattern of *actual* similar constitutional violations," and

(2) "the municipality consistently *failed to discipline* those involved."  *Id.* (emphasis added).

Even if Plaintiff had shown an obvious need for more or better supervision by listing the

numerous lawsuits and complaints, he has not stated any facts to show that the City has acted

with deliberate indifference.  Plaintiff alleges that the City has "failed to properly train, screen,

supervise, or discipline employees and police officers, and failed to inform the individual

defendants' supervisors of their need [to do so]."  TAC ¶ 82.  He broadly accuses the City of

acting with deliberate indifference towards the various complaints that have been brought against

its law enforcement officers, stating, in general terms, that the City failed to take "remedial

actions" in response to the list of lawsuits.  *Id.* ¶¶ 70, 79.  Thus, although Plaintiff alleges a

---

[9] In *Vann*, the plaintiff presented evidence of the NYPD's "general methods of dealing with problem policemen" and "of its responses to past incidents" involving one of the individual defendants.  *Vann*, 72 F.3d at 1050.

pattern of *allegations* about similar misconduct, he does not specifically claim that the City *failed to investigate* the list of lawsuits.  It would be inappropriate for the Court to find that the City was acting with deliberate indifference by failing to discipline officers who were never deemed to have violated any individual's constitutional rights.[10]  The TAC does maintain that the City "failed to properly investigate" various complaints filed with the New York City Civilian Complaint Review Board ("CCRB") and the NYPD's Internal Affairs Bureau ("IAB").  TAC ¶ 79.  However, Plaintiff does not allege any specific facts as to the contents of the complaints, how many were filed, and when they were filed.  Second, Plaintiff cannot "proceed on the assumption that if a complaint, whether administrative or by way of a civil action, is filed against an officer, it follows *ipso facto* that he is guilty of a constitutional violation[.]" *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011) (granting summary judgment in favor of the City on the plaintiff's *Monell* claim).  Therefore, the CCRB and IAB complaints also do not support a finding of a failure to supervise/discipline by the City.

Finally "to state a claim for municipal liability based on a failure to train, Plaintiff must allege facts that support an inference that the municipality failed to train its police officers, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries." *Tieman*, 2015 WL 1379652, at *22 (citing *Acosta v. City of New York*, No. 11 Civ. 856 (KBF), 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing the *Monell* claim after the plaintiff simply stated that the city "failed to train its police officers as to display a deliberate

---

[10] In fact, Defendants explain that General Municipal Law 50-k requires the New York City Law Department ("Law Department") to investigate and determine whether an officer was acting in violation of the law or any department rules or procedures whenever a police officer is sued for on-the-job conduct.  Doc. 64 at 3.  According to Defendants, if the Law Department determines that the officer did not violate any laws, rules or procedures, he or she is entitled to representation and indemnification by the City, as was the case in every case that Plaintiff cites against the individual officers.  *Id.*

indifference," because plaintiff "failed to set forth factual allegations that would support a plausible inference that the [c]ity's 'policies' or 'customs' caused . . . [the] alleged violations of [the] plaintiff's rights.")).  Plaintiff has also failed to plead any facts that suggest a failure to train the Officers caused his constitutional violation.  He neither cites to procedural manuals and training guides, nor highlights the pertinent aspects of police training in order to prove the claim. *See Marte v. New York City Police Dep't*, No. 10 Civ. 3706 (PKC), 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010).  Plaintiff fails to substantiate his allegations with sufficient facts about his or others' experiences that suggest the existence of a failure to train, supervise, or discipline to such an extent that it amounts to deliberate indifference on behalf of the City.  Therefore, his *Monell* claim will be dismissed without prejudice.

## V.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's § 1983 claims for (1) malicious prosecution; (2) malicious abuse of process; (3) deprivation of right to a fair trial; and (4) *Monell* liability is GRANTED.  Plaintiff's *Monell* claim is dismissed without prejudice; the remaining claims are dismissed with prejudice.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 60.  The parties are instructed to submit a proposed discovery scheduling order by **July 21, 2015**.

It is SO ORDERED.

Dated:    July 14, 2015
          New York, New York

_____
Edgardo Ramos, U.S.D.J.